IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOHNNIE ROSENBAUM,

     Plaintiff,

v.                           Civil Action No. 3:11CV747

ROSS MAURICE,

     Defendant.

MEMORANDUM OPINION

Johnnie Rosenbaum, a former Virginia prisoner proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983.[1] Rosenbaum asserts that Ross Maurice, a lieutenant at Deep Meadow Correctional Center ("Deep Meadow"), violated Rosenbaum's Eighth Amendment[2] rights by using excessive force against Rosenbaum. This matter is now before the Court on Maurice's Motion for Summary Judgment. (ECF No. 17.) Maurice

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

provided the appropriate Roseboro[3] notice to Rosenbaum. (ECF No. 19.) Maurice responded. (ECF Nos. 21, 22.) The matter is ripe for disposition.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

---

[3] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

2

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'" Id. (quoting Munson, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 & n.7 (5th Cir. 1992)); see Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Maurice submitted: the affidavit of T. Cooley (Mem. Supp. Mot. Summ. J. Ex. I ("Cooley Aff.")); his own affidavit (id. Ex. II ("Maurice Aff.")); the affidavit of T. Thompson (id. Ex. III ("Thompson Aff.")); and copies of Rosenbaum's medical records. (Id.

3

Encl. A.)   In response, Rosenbaum submitted a Response to Motion for Summary Judgment to which he attached his medical records and a Memorandum in Response to Defendant's Motion for Summary Judgment.

Rosenbaum swore to the truth of his entire Response to Motion for Summary Judgment.   (Resp. Mot. Summ. J. 5 (as paginated by the Court's CM/ECF docketing system).)   By Memorandum Order entered on April 25, 2012, the Court advised Rosenbaum that the Court would not consider as evidence in opposition to any motion for summary judgment a memorandum of law and facts that is sworn to under penalty of perjury. Rather, any verified allegations must be set forth in a separate document titled "Affidavit" or "Sworn Statement" and reflect that the sworn statements of fact are made on personal knowledge and that the affiant is competent to testify on the matter stated therein.  See Fed. R. Civ. P. 56(c)(4).

Rosenbaum's Response to Motion for Summary Judgment runs afoul of these prohibitions.   Accordingly, by Memorandum Order entered January 4, 2013 the Court informed Rosenbaum that the Court would not consider his Response to Motion for Summary Judgment as evidence.   The Court granted Rosenbaum until January 14, 2013 to file any further response to the Motion for Summary Judgment.   Rosenbaum failed to file any further response.

4

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment.

## II.  SUMMARY OF PERTINENT FACTS

In the fall of 2010, Rosenbaum sometimes used a sling for an injury to his left arm and shoulder. (Thompson Aff. ¶¶ 6, 7.) Based on a report that Rosenbaum only used the sling during meal times to utilize the physical disability line, on December 16, 2010, Dr. Clarke discontinued the use of the sling for Rosenbaum's arm. (Id. ¶ 8.)

Also on December 16, 2010, correctional officers at Deep Meadow, including Lieutenants Cooley and Maurice, conducted a shakedown of Rosenbaum's dormitory unit.[4] (Maurice Aff. ¶ 4; Cooley Aff. ¶ 4.) "All inmates were required to exit the building for the shakedown. As offender Rosenbaum was getting ready to leave the building, [Lieutenant Cooley] saw that he was wearing a sling." (Cooley Aff. ¶ 4.) Lieutenant Cooley "noticed the sling because Rosenbaum didn't always wear it. [Lieutenant Cooley] told Rosenbaum that he needed to remove the sling for a pat down before leaving the building." (Id.)

Rosenbaum began cursing Lieutenant Cooley and told him "that he was not going to remove the sling and that nobody was

---

[4] Lieutenant Maurice "was in charge of the shakedown team and was observing inmates exiting the building." (Maurice Aff. ¶ 4.)

going to check it. Rosenbaum, however, did remove the sling as
he continued to curse [Lieutenant Cooley]." (Id.) "To the best
of [Lieutenant Cooley's] recollection, [Rosenbaum] placed the
sling on the table." (Id.)

Lieutenant Maurice "heard an inmate being disruptive" in
the dormitory, so he "went to see what was happening. [He]
approached the table area in the dayroom and saw inmate
Rosenbaum standing in front of Lt. Cooley and cursing at him."
(Maurice Aff. ¶ 4.) Lieutenant Maurice "instructed Rosenbaum to
calm down at which time [Rosenbaum] became aggressive towards
[Lieutenant Maurice] and started to curse [him]." (Id. ¶ 5.)
"Rosenbaum was not wearing a sling at this time." (Id.)

"Due to Rosenbaum's disruptive behavior, [Lieutenant
Maurice] gave [Rosenbaum] several orders to place his hands on
the wall so that [Lieutenant Maurice] could place him in
handcuffs. Rosenbaum refused." (Id.) Because Rosenbaum
refused to comply with Lieutenant Maurice's orders, Lieutenant
Maurice "placed [his] hands on Rosenbaum and walked him the few
steps to the wall. [Lieutenant Maurice] then placed [Rosenbaum]
against the wall so that [he] could apply handcuffs." (Id.) At
that time, Rosenbaum stated "that he could not be handcuffed
from behind because he had an injury." (Id.) Lieutenant
Maurice had Rosenbaum turn around to face him and placed
Rosenbaum in handcuffs in the front. (Id.) Thereafter,

Lieutenant Maurice "passed [Rosenbaum] off to a correctional officer to escort him to the Watch Commander's office so that [Rosenbaum] could calm down. (Id. ¶ 6.)

Lieutenant Maurice explains that, because "there were many inmates exiting the building, I wanted to have minimal disruption to the other inmates and wanted to keep the situation with Rosenbaum from escalating. This is why I took steps to place Rosenbaum against the wall and handcuff him." (Id. ¶ 9.)

"It is standard procedure for inmates to be handcuffed from behind unless there is a medical reason why this cannot be done." (Id.)  Lieutenant Maurice swears:

> I did not yank Rosenbaum's coat and sling off as he
> alleges. I did not spin him around and slam him
> against the wall nor did I "force his injured bad arm"
> as he alleges around his back. I was unaware that
> there was a problem until he told me that he had an
> injury and could not be handcuffed in the back. Prior
> to this incident, I did not know who this inmate was
> and I had no knowledge of him occasionally wearing a
> sling.

(Id. ¶ 8.)[5]

"Rosenbaum came back to the building after the shakedown was completed. Lt. Maurice and [Lieutenant Cooley] talked to Rosenbaum about what happened at the shakedown. Rosenbaum apologized to [them] about his behavior." (Cooley Aff. ¶ 6.)

---

[5]    Lieutenant Cooley largely corroborates Lieutenant Rosenbaum's version of the incident. (Cooley Aff. ¶ 5.)

That evening, Rosenbaum went to the medical department. (Thompson Aff. ¶ 9.)    "Rosenbaum complained of severe left shoulder pain due to previous rotator cuff injury that was made worse by security putting on handcuffs.  Rosenbaum stated to the nurse that he had taken Motrin for the pain, but it did not help." (Id.)

"On December 20, 2010, Rosenbaum reported to medical that security staff re-injured his shoulder.  The nurse noted that he was seen using the left arm to open the office door and also to take his jacket on and off without difficulty." (Id. ¶ 12.)

On May 3, 2011, Rosenbaum underwent surgery for a left shoulder rotator cuff tear.  (See id. ¶¶ 15, 17.)

### III.  ANALYSIS

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that "'the prison official acted with a sufficiently culpable state of mind (subjective component) and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component).'"  Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)).  "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'"  Id. (citing

Wilson v. Seiter, 501 U.S. 294, 298-300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" Williams, 77 F.3d at 761 (quoting Hudson v. McMillian, 503 U.S. 1, 5 (1992)).

## A.   Excessive Force Inquiry

When an inmate claims that prison officials used excessive force against his person, the objective component is less demanding relative to the subjective component. See id. With respect to the objective component, the inmate must demonstrate that the "nature" or amount of force employed "was nontrivial." Wilkins v. Gaddy, 130 S. Ct. 1175, 1179 (2010); see id. at 1178 (observing that "a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim" (quoting Hudson, 503 U.S. at 9)). Regarding the subjective component, the inmate must demonstrate "'wantonness in the infliction of pain.'" Iko, 535 F.3d at 239 (quoting Whitley v. Albers, 475 U.S. 312, 322 (1986)). Specifically, "the 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson, 503 U.S. at 7).

The Supreme Court has identified a number of "factors to assist courts in assessing whether an officer has acted with wantonness." Id. (internal quotation marks omitted). These include:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

Id. (quoting Whitley, 475 U.S. at 321).[6]

Additionally, although not dispositive, the Court considers the extent of the injury suffered by the inmate as part of the subjective inquiry. Wilkins, 130 S. Ct. at 1178. The extent of the injury "may suggest whether the use of force could plausibly have been thought necessary in a particular situation" or "provide some indication of the amount of force applied." Id. (internal quotation marks omitted). Furthermore, comments or actions by a defendant suggesting a malicious motive also bear on the subjective inquiry. See Orem v. Rephann, 523 F.3d 442, 447 (4th Cir. 2008) (observing that evidence of the defendant's motives is relevant to the excessive force inquiry). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified

---

[6] Hereinafter, the Court refers to these four criteria as the Whitley factors.

10

infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321 (citing Duckworth v. Franzen, 780 F.2d 645, 652 (7th Cir. 1985)).

**B.  Analysis Of Rosenbaum's Claim**

For the reasons articulated more fully below, no reasonable jury could conclude that Lieutenant Maurice's conduct supports an inference of malicious and sadistic intent.[7]  Accordingly, Rosenbaum's claim will be dismissed.

**1.  Need For The Application Of Force**

The first Whitley factor, the need to apply force, favors Lieutenant Maurice.  Rosenbaum cursed and refused to obey the orders of Lieutenants Cooley and Maurice.  Lieutenant Maurice needed to use some measure of force to curb Rosenbaum's disruptive behavior and make him obey directions.  See Williams, 77 F.3d at 762 (concluding guards' decision to use some force justified when inmates refused to cease, unruly, disruptive conduct).

---

[7] "One acts 'maliciously' by undertaking, without just cause or reason, a course of action intended to injure another; in contrast, one acts 'sadistically' by engaging in extreme or excessive cruelty or by delighting in cruelty." Howard v. Barnett, 21 F.3d 868, 872 (8th Cir. 1994) (citing Webster's Third New International Dictionary 1367, 1997-98 (unabridged 1981); Black's Law Dictionary 956, 958, 1336 (6th ed. 1990); The American Heritage Dictionary 759, 1084 (2d ed. 1982)).

### 2. Relationship Between Any Need And The Amount Of Force

As to the relationship between the need for force and the force employed, Lieutenant Maurice did not hit or kick Rosenbaum. Rather, after Rosenbaum repeatedly failed to obey Lieutenant Maurice's orders, Lieutenant Maurice forcefully walked Maurice over to the wall and placed him in handcuffs. Lieutenant Maurice explains:

> It is a standard security technique to place an inmate against a wall in order to gain control of him if he is exhibiting aggressive, disruptive behavior. Security staff is trained in this type of maneuver and it is appropriate to place an inmate against a wall to gain control over him. Rosenbaum was being belligerent and arguing. He was not cooperating and did not obey my direct orders to place his hands on the wall. I therefore took appropriate action to place him against the wall in order to gain control of the situation. Rosenbaum continued to resist and act belligerent as I was placing him against the wall.

(Maurice Aff. ¶ 7.) The record reflects that Lieutenant Maurice employed a reasonable degree of force to stem Rosenbaum's disruptive conduct. Accordingly, the second factor favors Lieutenant Maurice.

### 3. Extent Of The Threat Reasonably Perceived By Lieutenant Maurice

With respect to the threat reasonably perceived by Lieutenant Maurice, Rosenbaum's cursing and disregard of orders did not occur in the confines of his cell. Rather, Rosenbaum's disruptive behavior occurred under more volatile circumstances where numerous inmates were exiting the dormitory unit. <u>See</u>

Whitley, 475 U.S. at 321 (acknowledging "'the ever-present potential for violent confrontation and conflagration'" in the prison environment (quoting Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 132 (1977))).  Lieutenant Maurice reasonably perceived the need for deliberate, forceful action lest the disturbance escalate and spread to the other inmates exiting the dormitory.  See Stenzel v. Ellis, 916 F.2d 423, 426 (8th Cir. 1990) ("When a prisoner, having been warned three times, refuses to comply with [a direct order], the incident has escalated into a 'disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff." (omission in original) (quoting Whitley, 475 U.S. at 320)). Thus, the third Whitley factor favors Lieutenant Maurice.

### 4.   Lieutenant Maurice's Efforts To Temper The Severity Of His Response

With respect to his efforts to temper the severity of his response, Lieutenant Maurice had no knowledge that Rosenbaum had shoulder problems.  As soon as Rosenbaum alerted Lieutenant Maurice to his injury, Lieutenant Maurice altered his handcuffing technique so as not to exacerbate that injury.  Such actions significantly dispel the notion that Lieutenant Maurice acted with a malicious intent or "delight[ed] in cruelty."

Howard, 21 F.3d at 872.   Accordingly, the fourth Whitley factor favors Lieutenant Maurice.[8]

### 5.   Rosenbaum's Injuries

Although not dispositive, the extent of the injury suffered by the inmate bears on the subjective inquiry.   Wilkins, 130 S. Ct. at 1178.   Though the relationship between injury and force is "only imperfectly correlated," the extent of the injury "may suggest whether the use of force could plausibly have been thought necessary in a particular situation" or "provide some indication of the amount of force applied."   Id. (internal quotation marks omitted).

Here, Lieutenant Maurice's actions exacerbated Rosenbaum's shoulder injury.   However, "[t]he infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."   Whitley, 475 U.S. at 319.   The record indicates that Rosenbaum suffered from shoulder problems long before his confrontation with Lieutenant Maurice.   Thus, the proof

---

[8] Rosenbaum fails to identify any comments by Lieutenant Maurice or past history with Lieutenant Maurice which indicates that Lieutenant Maurice acted with a malicious motive.   See Orem, 523 F.3d at 447; Majette v. GEO Group, Inc., No. 3:07cv591, 2011 WL 166289, at *5 (E.D. Va. Jan. 18, 2011) (observing that the "contentious history" between correctional officer and inmate favors a finding of malicious intent).

respecting the extent of Rosenbaum's injuries as a result of Lieutenant Maurice's use of force fails to weigh in favor of establishing malicious and sadistic intent on the part of Lieutenant Maurice. See Cherry v. Sherin, 3:10CV434, 2012 WL 664203, at *6 (E.D. Va. Feb. 28, 2012) (concluding aggravation of inmate's preexisting injuries failed to suffer an inference of malicious intent).

### 6. Conclusion

The evidence, viewed in the light most favorable to Rosenbaum, shows that Lieutenant Maurice moved Rosenbaum to the wall and handcuffed him in order quell Rosenbaum's disruptive behavior and avert a possible disturbance among the other inmates. Although that may have exacerbated Rosenbaum's shoulder injury, the record is clear that Lieutenant Maurice evinced no intent to hurt Rosenbaum. Rather, Lieutenant Maurice reasonably perceived the necessity to employ some minimal force to control Rosenbaum. Rosenbaum's subsequent ameliorative action and apology further demonstrates the lack of malevolent intent. And, Rosenbaum has offered no proof to the contrary. Thus, Lieutenant Maurice acted in a "good faith effort to maintain or restore order," rather than "maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. 320-21 (internal quotation marks omitted). Accordingly, Rosenbaum's claim will be dismissed.

15

## IV.   CONCLUSION

For the foregoing reasons, Lieutenant Maurice's Motion for Summary Judgment (ECF No. 17) will be granted.   Rosenbaum's claim will be dismissed and the action will be dismissed.

The Clerk is directed to send a copy of the Memorandum Opinion to Rosenbaum and counsel of record.

It is so ORDERED.

/s/   _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:   _March 25, 2013_

16